UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL VELASCO,

        Plaintiff,        Civil Action No.: 14-12450
                                     Honorable Nancy G. Edmunds
        v.                  Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.
_____/

# REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [R. 9, 20]

    Plaintiff Michael Velasco appeals a final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions, referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Court finds that the decision by the administrative law judge ("ALJ") is not supported by substantial evidence, and thus **RECOMMENDS** that:

- Velasco's motion **[R. 9]** be **GRANTED**;
- the Commissioner's motion **[R. 20]** be **DENIED**; and,

- the Commissioner's decision **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for further consideration consistent with this Report and Recommendation.

## I.    BACKGROUND

### A. Procedural Background and Velasco's Claimed Disabilities

Velasco was previously determined to be disabled as of December 1, 2002, due to a primary diagnosis of Affective Disorder. [R. 6-3, Tr. 79-80]. When he was 29 years old, his disability was found to have ceased on November 10, 2011 due to an improvement in mental health. [R. 6-2, Tr. 29; R. 6-3, Tr. 82-86; R. 6-4, Tr. 87-89]. Velasco filed a request for reconsideration based on his alleged severe back pain, depression and anxiety, but the ALJ found him to be no longer disabled after a hearing. [R. 6-4, Tr. 93; R. 6-2, Tr. 15-30]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [R. 6-2, Tr. 1-3]. Velasco timely filed for judicial review. [R. 1].

Velasco has one year of prior work experience as a security guard. [R. 6-2, Tr. 47]. He alleges that he was disabled from frequent headaches, neck pain, numbness in extremities, back pain, emotional instability and depression. [*Id.*, Tr. 49-70].

**B. The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant continues to be disabled by analyzing the following sequential steps.  First, for disability insurance benefits, if the applicant is "doing substantial gainful activity," he or she will be found no longer disabled.  20 C.F.R. § 404.1594(f). In the second step for DIB, and the first step for supplemental security income,[1] if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, disability continues. *Id.*, 20 C.F.R. § 416.994(b)(5). If the next step is reached, the Commissioner considers whether there has been a medical improvement. *Id.* If so, the Commissioner examines whether the medical improvement is related to the claimant's ability to do work. *Id.* If the medical improvement does relate to the claimant's ability to do work, the Commissioner must

---

[1] Sections 404.1594(f) and 416.994(b)(5), which pertain to DIB and SSI respectively, list the same steps of analysis, with the exception of the first step of the DIB analysis, which has no SSI equivalent.

determine whether the claimant's current impairments are severe. *Id*. If not, the claimant is not disabled. *Id*. If the impairments are severe, the Commissioner assesses the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can do past relevant work. *Id.* If the claimant cannot do past relevant work, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.*

Applying this framework, the ALJ concluded that Velasco was no longer disabled. First, she found that Velasco had not engaged in substantial gainful activity since the date of cessation of disability. [R. 6-2, Tr. 17]. Second, she found that Velasco had the severe impairment of degenerative disc disease, which did not meet or medically equal the severity of a listed impairment. [*Id.*, Tr. 17, 22]. Third, the ALJ found that there was a medical improvement as of November 11, 2011. [*Id.*, Tr. 17]. Fourth, she found that the medical improvement was related to Velasco's ability to work, "because it has resulted in no mental limitations in claimant's residual functional capacity." [*Id.*, Tr. 22].

At the next step, the ALJ found that Velasco continued to have a severe impairment, though not his original impairment of affective disorder.

4

[*Id.*]. The ALJ then found that Velasco had the following residual functional capacity: "[He can] perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. He can frequently balance and stoop and occasionally kneel, crouch, and crawl. He would need to avoid concentrated exposure to vibration, hazardous machinery, and heights." The ALJ concluded that Velasco was capable of performing his past relevant work as a security guard and other jobs in significant numbers in the national economy, and that he was thus not disabled. [*Id.*, Tr. 28-30].

## II.  ANALYSIS

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v.*

5

*McMahon*, 499 F.3d 506, 513 (6th Cir. 2007). Velasco's prior attorney of record filed a motion for summary judgment, but that attorney and his firm's representation of Velasco was terminated from this and other Social Security cases due to malfeasance. [*See* R. 14; 13-cv-14544, R. 16-4]. The malfeasance came to light after the attorney was "repeatedly criticized by judicial officers in this district, and the relief requested therein routinely denied, due to their 'conclusory assertions' and lack of any developed argument." [14-cv-10251, R. 13, PgID 574]. After his attorney's termination from this case, Velasco was given an opportunity to file another motion for summary judgment, [R. 19], but he did not do so. The Court has therefore considered the arguments in the motion filed by Velasco's prior attorney, but it suffered from the same deficiencies previously described. Therefore, in the interest of justice, the Court has also independently considered the evidence in the record.

    The motion filed on behalf of Velasco first argues that the ALJ improperly shifted her fact-finding duties to the vocational expert ("VE") in finding that he could return to past relevant work. This argument is without merit. An ALJ is permitted to elicit the testimony of a vocational expert to determine whether a claimant can perform is past work. *Sweeney v. Comm'r of Soc. Sec.*, 2014 WL 4374348, *10 (E.D. Mich. Sept. 4, 2014)

(citing *Wright-Hines v. Comm'r of Soc. Sec.*, 597F.3d 392, 395 (6th Cir. 2010)). *See also* 20 C.F.R. § 404.1560 ("We may use the services of vocational experts or vocational specialists, or other resources . . . to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity.").

The second argument in the filed motion is that the ALJ's assessment of his RFC was the result of improperly discrediting Velasco's credibility and failing to properly evaluate the evidence. After reviewing the record, the Court agrees that the ALJ's assessment of Velasco's RFC is not supported by substantial evidence in the record.

## A.

The assessment of an RFC is within the province of the ALJ, and must be upheld so long as it is supported by substantial evidence. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). "In formulating a residual functional capacity, the ALJ evaluates *all* relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." 20 C.F.R. § 404.1545(a)(3) (emphasis added). *Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012). In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account

7

whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

During the hearing, Velasco testified that he could not sit for more than 45 minutes, or stand or walk for more than 10 minutes. [R. 6-2, Tr. 45, 54-56]. In finding that Velasco was nonetheless capable of light work, which requires a good deal of walking, standing or sitting,[2] the ALJ cited to a host of instances in which Velasco's examinations and self-reports revealed normal gait, posture, strength, ranges of motion, reflexes and the absence symptoms including pain, edema or tenderness. [R. 6-2, Tr. 24-27, *citing* R. 6-7, Tr. 308, 343-34, 351-56, 363-64, 446, 454, 456-57, 469-70, 509, 529; R. 6-8, Tr. 561, 615, 619, 624, 634, 641-43, 636, 692-93, 700, 703, 707, 712, 716, 730, 732, 734, 738, 828-29, 834-35, 836, 847, 849, 902-03, 905-06, 961]. The ALJ further cited a May 2013 MRI that revealed "only mild neural foraminal narrowing and no significant spinal canal stenosis." [R. 6-2, Tr. 25-26, citing R. 6-8, Tr. 822].

---

[2]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

In formulating an RFC for light work, the ALJ additionally reasoned that Velasco did not receive the type of medical treatment that one would expect if he were totally disabled, may not have been compliant with this medications, and missed physical therapy appointments, [R. 6-2, Tr. 26, *citing* R. 6-7, Tr. 375, 403, 439, 529, 535; R. 6-8, Tr. 688, 836, 849, 852]; that the treatment he received had been generally successful in controlling his symptoms, [R. 6-2, Tr. 26, *citing* R. 6-7, Tr. 527, 529; R. 6-8, Tr. 708, 730, 732, 736, 744]; and that two medical sources who performed record reviews opined that Velasco could perform light work. [R. 6-2, Tr. 27; R. 6-7, Tr. 328-34, 539-45].

In offering this reasoning when assessing Velasco's RFC, the ALJ relied upon fragments of the record and in large part distorted it. When determining that Velasco suffered the severe impairment of degenerative disc disease, the ALJ described evidence and testimony that she then disregarded in assessing his RFC. [R. 6-2, Tr. 22-23]. This evidence included Velasco's micro lumbar diskectomy in April 2009, his many trips to the emergency room complaining of back pain and pain radiating down both legs, and a May 2013 EMG that showed both poly neuropathy and radiculopathies. [R. 6-7, Tr. 276-280, 343-45, 358-67, 372-78, 385, 387-88, 402-406, 439-42, 449-55, 458-67, 476-88, 527-29; R. 6-8, Tr. 633-39,

9

681, 720-23, 728,31, 793-807, 822-26, 856-57, 861-66, 880-81, 963-66].

Velasco's "complex" pain issues and dysfunction, and the May 2013 EMG results, were discussed at length by Jose Juardo, M.D., who specializes in physical medicine, rehabilitation and electromyography. [R. 6-8, Tr. 823-26]. The EMG showed Velasco to have bilateral C5-T1 radiculopathy, mild with denervation; bilateral S1 radiculopathy, mild with denervation; bilateral carpal tunnel syndrome, mild with no denervation, superimposed with median neuropathy on both sides; and bilateral ulnar neuropathy presenting as Guyon's and cubital tunnel syndrome, mild, no denervation. [*Id.*, Tr. 825]. Dr. Jurado opined that these findings explained Velasco's pain and suggested other possible causes: "All these are neuromuscular junction changes that would in part explain the pain issues his patient is having"; "The other issue of his pain is due to an axonal demyelinating neuropathy of which the bone and joint issues are involved . . ."; "He may have congenital spinal issues and along with the possible scoliosis . . . ." [*Id.*, Tr. 825-26]. The ALJ did not mention Dr. Jurado's opinion.

Of further note, the medical sources who reviewed Velasco's records in November 2011 and March 2012 and found him capable of light work, and whose opinions the ALJ gave some weight, did not have the benefit of

10

the EMG results or of Dr. Jurado's opinion. [R. 6-2, Tr. 27; R. 6-7, Tr. 328-34; 539-45]. Nor did those consultants review the results of the May 2013 MRI that revealed mild neural foraminal narrowing. [R. 6-8, Tr. 822].

In assessing Velasco's RFC, the ALJ highlighted the negative symptoms in the record and stated that his symptoms were controlled with treatment, while completely ignoring the indications of positive symptoms and the lack of pain control, often on the very records she cited. She failed to note the times that Velasco reported significant and worsening back pain despite treatment, [R. 6-7, Tr. 343-44, 350-51, 363, 454, 527; 529; R. 6-8, Tr. 634, 730, 800, 828, 834-35, 849, 902, 905]; that medical sources noted tenderness or swelling across the back, [R. 6-7, Tr. 351, 363; R. 6-8, Tr. 634, 722, 800, 836, 906]; that Velasco described his pain as radiating into his legs, [R. 6-7, Tr. 364, 834, 849, 902]; that he had an irregular gait, [R. 6-7, Tr. 529; R. 6-8, Tr. 634]; or that a straight leg exam was positive on the left in May 2013, [R. 6-8, Tr. 800, 906]. Notably, in many of the records relied upon by the ALJ, the chief complaint for Velasco's medical visits was some ailment other than back pain. For example, many of the records that the ALJ cited as indicating that Velasco reported no pain or other back symptoms were for medical treatments other than his back pain. For example, the ALJ cited treatment records for a rash and there is no

11

indication that Velasco was asked to report his pain level with respect to his back. [R. 6-2, Tr. 26, *citing* R. 6-8, Tr. 732, 736, 744].

The ALJ's statement that, on January 28, 2013, Velasco reported that his back was improving, is woefully incomplete. The report from that date indicated that the treating physician recommended continued use of muscle relaxants, pain medications, ice and heat, trial capsaicin cream, and a "gradual return to regular activity," but that if symptoms persisted, Velasco would consider additional imaging or referral to neurosurgery. [R. 6-8, Tr. 730]. In other words, Velasco was not then capable of regular activity and, if his symptoms persisted, a referral to neurosurgery was possible. At the October 2013 hearing, Velasco testified that a neurologist had recommended surgery. [R. 6-2, Tr. 51]. Yet, the ALJ cited to a December 2011 second-hand statement that a neurosurgeon did not believe that Velasco was a candidate for surgery as evidence that his medical treatment is inconsistent with disability. [R. 6-2, Tr. 26, citing R. 6-7, Tr. 439].

Moreover, the ALJ's conclusion that Velasco did not receive the type of medical treatment expected of someone with a disability is not supported by substantial evidence. As the January 28, 2013 report suggested, the doctors were prescribing an array of treatments for Velasco's back, which

12

included narcotic pain medications, muscle relaxants, a back brace, epidural injections and physical therapy, and surgical intervention was possible. [See, e.g., R. 6-7, 527, 529; R. 6-8, Tr. 706, 729-30, 850]. The ALJ called into question Velasco's credibility regarding his claim that he missed six physical therapy appointments due to his hospitalization for pneumonia; the ALJ noted that his hospitalization only lasted four days. [R. 6-2, Tr. 26]. Notwithstanding, Velasco's pneumonia likely affected his ability to participate in physical therapy beyond the days that he was hospitalized and, once he was off of his antibiotics, he sought to resume physical therapy. [R. 6-7, Tr. 529]. Despite the array of treatment provided to Velasco, he continued to experience significant back pain and reported in June 2013 that Valium was not relieving his pain. [See R. 6-8, Tr. 803-07, 823-26].

The portions of the record the ALJ failed to consider in assessing his RFC calls into question the conclusion that he is capable of light work. For that reason, this matter should be remanded for reconsideration in light of the full record.

**B.**

Upon remand, the ALJ should further reconsider whether Velasco has a mental impairment that is severe and that should be accounted for in

the RFC. The ALJ's determination that Velasco's affective disorder was not a severe impairment was supported by the relatively scarce records pertaining to his mental health prior to the hearing.

On October 18, 2011, Velasco was reevaluated for Social Security disability by Michael Brady, Ph.D. [R. 6-7, Tr. 307-12]. Dr. Brady found that Velasco suffered from major depressive disorder, which was recurrent but in full remission, and had a GAF of 85.[3] [*Id.*, Tr. 310]. Ron Marshall, Ph.D., and Judy Strait, Psy.D., L.P., who evaluated Velasco's records, also determined that that impairment was non-severe. [R. 6-2, Tr. 19; R. 6-7, Tr. 313, 323, 546-58]. At times, Velasco did report anxiety and was observed to be manic during the period at issue. [See R. 6-7, Tr. 385, 454, 459; R. 6-8, Tr. 698-700, 701-04]. Additionally, he was seen several times at Janes Street Behavioral Health for mental health issues between June and October of 2013, but was not having thoughts of harming himself or others, and was usually not found to be significantly impaired in his function. [R. 6-

---

[3] GAF scores in the range of 81–90 indicate "absent or minimal symptoms (e.g., mild anxiety before an exam), good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns." *Lewandowski v. Comm'r of Soc. Sec.*, 2009 WL 2885055, at *11 (E.D. Mich. Sept. 1, 2009) citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders–Text Revision (4th ed. 2000) at 34 ("DSM–IV Manual").

8, Tr. 968-83]. No treating physician's opinion from 2010 onwards finds that Velasco's impairment of bipolar/affect disorder would preclude him from working.

For these reasons, the ALJ's determination that Velasco was not mentally impaired was supported by substantial evidence. However, after the hearing, from November 30 to December 4, 2013, Velasco was committed to the White Pine Mental Health Center due to mental illness and suicidal ideation. [R. 6-9, Tr. 984-89]. After that, he was seen twice at the Saginaw County Community Mental Health Authority. [*Id.*, Tr. 990-95]. Upon remand, the ALJ should consider this new evidence.

### III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Velasco's Motion for Summary Judgment **[R. 9]** be **GRANTED**, the Commissioner's Motion **[R. 20]** be **DENIED** and the Commissioner's decision be **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: February 26, 2016

## **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal.   Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991)*;* United States v. Walters, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in**

**length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 26, 2016.

                                          s/Marlena Williams
                                          MARLENA WILLIAMS
                                          Case Manager